IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KEVIN MAURICE BIRDINE, | ) | |
| | ) | |
| Plaintiff, | ) | 8:04cv202 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| U.S. FEDERAL GOVERNMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the following pending motions: (1) filing no. 68, the Motion for Summary Judgment filed by the remaining defendant in this case, Douglas County, Nebraska; (2) filing no. 71, the Final Motion for Summary Judgment filed by the plaintiff, Kevin Maurice Birdine; (3) filing no. 78, the plaintiff's Motion for Extension of Time; (4) filing no. 79, the plaintiff's Motion to Proceed to Trial in Opposition of Defendant's Motion for Summary Judgment; (5) filing no. 85, the plaintiff's Motion in Support of Plaintiff's Motion for Summary Judgment; (6) filing no. 86, the plaintiff's Motion in Direct Opposition to Defendant's Brief for Summary Judgment; (7) filing no. 88, the defendant's Motion to Extend Progression Order Deadline; and (8) filing no. 89, the plaintiff's Objection to Motion to Extend Progression Order Deadline.  As a preliminary matter, filing no. 78, the plaintiff's Motion for Extension of Time, is granted.  Filing no. 88, the defendant's Motion to Extend Progression Order Deadline, is granted, and filing no. 89, the plaintiff's Objection to Motion to Extend Progression Order Deadline, is overruled.

The plaintiff originally asserted federal civil rights claims against the United States of America, Douglas County, Nebraska, and two Douglas County inmates.  The inmates inflicted a beating on the plaintiff while the plaintiff was detained at the Douglas County

1

Correctional Center ("DCCC") awaiting federal prosecution. In earlier proceedings, the court dismissed the United States and the two inmates from this action, leaving Douglas County as the only remaining defendant.

The plaintiff alleges that while he was a pretrial detainee engaged in cooperating with federal prosecutors by giving testimony against other defendants, the United States housed him at DCCC. However, DCCC allegedly has a policy or custom of deliberate indifference to the safety of inmates who are supposed to be kept separate from each other because, as in the plaintiff's case, one is engaged in providing testimony against another. Because of the defendant's alleged deliberate indifference and failure to protect him, DCCC placed the plaintiff in the same housing unit at DCCC as an inmate against whom the plaintiff provided evidence. That inmate and another prisoner attacked the plaintiff while he was asleep, inflicting serious injury.

## Failure to Protect

As a pretrial detainee, the plaintiff's claims against the defendant are "analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment .... However, because, '[u]nder the Fourteenth Amendment, pretrial detainees are entitled to "at least as great" protection as that afforded convicted prisoners under the Eighth Amendment,' we apply the identical deliberate-indifference standard as that applied to conditions-of-confinement claims made by convicts." Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005) (citations omitted).

It is true that "[p]ersons involuntarily confined by the state have a constitutional right to safe conditions of confinement." Osolinski v. Kane, 92 F.3d 934, 938 (9th Cir. 1996). However, "[n]ot every deviation from ideally safe conditions amounts to a constitutional

2

violation." Id. The Eighth Amendment's prohibition against cruel and unusual punishment can be violated by a failure to take reasonable measures to guarantee the safety of an inmate from violence by other prisoners. See, e.g., Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003): "The Supreme Court has held that the Eighth Amendment requires prison officials to take 'reasonable measures to guarantee the safety of inmates [and] ... to protect prisoners from violence at the hands of other prisoners.' Farmer v. Brennan, 511 U.S. 825, 832-33 ... (1994) (internal quotation marks and citations omitted)."

To prevail on an Eighth Amendment failure-to-protect claim, the plaintiff must show: "(1) that his incarceration in [the circumstances] posed a substantial risk of serious harm (objective component), and (2) the [defendants] actually knew of but disregarded, or were deliberately indifferent to, [the plaintiff's] health or safety (subjective component)." Crow v. Montgomery, 403 F.3d 598, 602 (8th Cir. 2005), citing Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003); Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir. 1998). See also Smith v. Arkansas Dep't of Correction, 103 F.3d 637, 644 (8th Cir. 1996) ( the plaintiff must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm and (2) the defendant subjectively knew of and disregarded an excessive risk to the plaintiff's safety).

In order to satisfy the second part of a failure-to-protect claim, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003), citing Farmer v. Brennan, 511 U.S. 825, 837 (1994). In other words, a defendant may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."

Fisher v. Lovejoy, 414 F.3d 659, 662 (7th Cir. 2005) (citation omitted).

"That the officer had actual knowledge of impending harm can be inferred from circumstantial evidence .... Proving deliberate indifference, however, requires more than a showing of negligent or even grossly negligent behavior .... Rather, the corrections officer must have acted with the equivalent of criminal recklessness .... Indeed, an officer who actually knew of a substantial risk to a detainee's safety is free from liability 'if [he] responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that [he was] deliberately indifferent.' .... 'The test of deliberate indifference ensures that the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation.'" Id. (Citations omitted.)

Thus, negligence does not suffice to establish deliberate indifference. See, e.g., Pagels v. Morrison, 335 F.3d 736, 742 (8th Cir. 2003) ("negligence cannot give rise to an Eighth Amendment failure-to-protect claim"); Tucker v. Evans, 276 F.3d 999, 1002 (8th Cir. 2002) (negligence, even gross negligence, is insufficient to prove a violation of the Eighth Amendment). Deliberate indifference requires the reckless or callous disregard of a known, excessive risk of serious harm to the safety of the plaintiff or other inmates in the plaintiff's position. Tucker v. Evans, 276 F.3d 999, 1001 (8th Cir. 2002). See also Crow v. Montgomery, 403 F.3d 598, 602 (8th Cir. 2005) (plaintiff alleged that customs and practices including inadequate recordkeeping, overcrowding, poor supervision, understaffing and inadequate classification of inmates evidenced the institutional deliberate indifference which enabled another inmate to attack him). However, the Eighth Circuit concluded that deliberate indifference requires more. "At most, [the plaintiff's] allegations show that the [prison] officials may have acted unreasonably in failing to take particular measures to

4

improve the conditions at the facility, but that does not rise to the level of deliberate indifference. Even if they were unreasonable, and might have done various things to prevent the blow [the plaintiff] endured, 'reasonableness is a negligence standard' and negligence cannot give rise to an Eighth Amendment failure-to-protect claim." Id. (Citation omitted.)

The plaintiff notes that the inmate primarily responsible for assaulting him then went on to attack at least two other prisoners within the next several months (see exhibits to filing no. 86). However, those attacks occurred *after* the assault on the plaintiff, so that the later events did not furnish the defendant with knowledge of the extent of the risk posed by the perpetrator until after the plaintiff had already sustained injury.

The plaintiff complains about a particular corrections officer who responded with indifference when the plaintiff warned him of a possible conflict between the plaintiff and the subsequent attacker. The plaintiff informed the officer of the brewing conflict the day before the attack on the plaintiff, but the officer merely offered the plaintiff protective custody, i.e., voluntary lockdown. When the plaintiff declined to be placed in segregation for his own protection, the officer conducted no investigation, failed to pass on the information to his superiors, and simply continued to read his newspaper.

While the conduct of the individual corrections officer might be characterized, at least in hindsight, as reckless, the plaintiff has not sued the officer, just the County. As the officer did not communicate the danger to others, no one else had knowledge of the plaintiff's warning. The County cannot be held liable to the plaintiff based merely on principles of vicarious liability or respondeat superior for constitutional injuries allegedly inflicted by an employee or other person. See, e.g., Monell v. New York City Dept. of

5

Social Services, 436 U.S. 658, 694, (1978); Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001), *citing* Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 405 (1997) and City of Canton v. Harris, 489 U.S. 378, 385 (1989).

"A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a "custom or usage" with the force of law.'" Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2003). See also Turney v. Waterbury, 375 F.3d 756, 761-62 (8th Cir. 2004) (citation omitted): "'In a section 1983 action, a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality.'...." Thus, the deliberate indifference, if any, of one guard who is not a defendant in the action, is not attributable to the County, particularly, as in this case, when the guard did not pass on the information given to him by the plaintiff.

A violation of DCCC's "keep separate" policy, standing alone, does not create a compensable claim under the Eighth Amendment or Due Process Clause. In this case, the summary judgment record contains no facts giving rise to an inference that the defendant subjectively acted, or failed to act, with deliberate indifference to the plaintiff's safety. Instead, the alleged conduct constitutes, at most, a negligent failure to prevent a "surprise attack" by another inmate. See, e.g., Jackson v. Everett, 140 F.3d 1149,1152 (8th Cir. 1998) : "An 'official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'" (Citation omitted.)

6

THEREFORE, IT IS ORDERED:

1. That filing no. 68, the defendant's Motion for Summary Judgment, is granted;

2. That filing nos. 71, 79, 85 and 86, the plaintiff's Motions to proceed to trial, for summary judgment, and in opposition to the defendant's motion, are denied;

3. That filing no. 78, the plaintiff's Motion for Extension of Time, is granted;

4. That filing no. 88, the defendant's Motion to Extend Progression Order Deadline, is granted, and filing no. 89, the plaintiff's Objection to Motion to Extend Progression Order Deadline, is overruled; and

5. That a separate judgment will be entered dismissing the plaintiff's complaint, as amended, and this action with prejudice.

February 7, 2006.  BY THE COURT:

s/ *Richard G. Kopf*
United States District Judge